UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN ANGELILLO, | ) | CIVIL ACTION NO. 4:23-CV-1078 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| FACEBOOK, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

John Angelillo ("Plaintiff") initiated this *pro se* negligence action against Facebook[1] ("Defendant"), in which he seeks damages for Facebook's failure to stop its users from posting and sharing defamatory statements about Plaintiff, and Facebook's failure to remove the defamatory statements from its website.

Currently before the Court is Defendant's motion requesting that Plaintiff's second amended complaint be dismissed under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff fails to allege any basis under which the Court could exercise personal jurisdiction over Defendant and any defamation claim is barred by 47 U.S.C. §230.[2]

---

[1] Meta Platforms, Inc. (f/k/a Facebook, Inc.) filed this motion to dismiss and a Rule 7.1 Disclosure Statement (Doc. 25).

[2] Defendant also asserts that dismissal is required because the case is time-barred and fails to state a claim upon which relief can be granted. Because we find adequate reasons to dismiss on other grounds, we do not reach these two defenses.

For the reasons stated herein, Defendant's motion to dismiss (Doc. 26) will be granted. Plaintiff's second amended complaint will be dismissed without leave to amend, and this case will be closed.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges that, on or around March 20, 2021, he struck up a conversation with a sixteen-year-old female who worked at a store where he shops. (Doc. 13, p. 4). He alleges that the young woman told him that she had been sexually abused by her father and was suicidal. *Id.* The young woman also asked Plaintiff for help. *Id.* Plaintiff states that he gave her some "directives." *Id.* This interaction upset the young woman's father and apparently inspired him to post defamatory statements about Plaintiff on Facebook. (Doc. 13, p. 3). Those statements included accusations that Plaintiff gave the woman "a note, a condom, or a joint." (Doc. 13, p. 4). The young woman's father also accused Plaintiff of being a pedophile, rapist, and serial killer. *Id.* Once posted, those statements were viewed by others, and shared. (Doc. 13, p. 3) (alleging others took part in and "expanded" the defamation).

After these allegations circulated, the Pike County District Attorney's Office "put together a case" against Plaintiff. *Id.* He alleges that the Pike County District Attorney's Office, and his public defender, "railroaded" and "threatened" him to enter into a plea agreement with "the option of a lot of time." *Id.*

On June 28, 2023, Plaintiff, an inmate in state custody, initiated this *pro se* civil action against Defendant. (Doc. 1). Plaintiff sought and was granted leave to proceed *in forma pauperis*. (Docs. 2, 6). Plaintiff's original and amended complaints were reviewed pursuant to 28 U.S.C. § 1915(e)(2), and it was found that they did not state a claim upon which relief could be granted. (Docs. 1, 7, 8, 12). Plaintiff was afforded leave to amend, and on July 26, 2023, submitted a second amended complaint. (Doc. 13). Neither the legal claims alleged, nor the facts they are based on are clearly set forth in this pleading. Throughout his second amended complaint, Plaintiff alleges that this is a case of "slander and defamation of character," but suggests that it was the young woman's father and "others," and not Defendant who slandered and defamed him. He appears to allege that Defendant was negligent for allowing that slander and defamation to occur and was negligent for allowing it to persist.

As relief, Plaintiff requests that the defamatory information be removed from the internet and seeks sixty-eight million dollars in money damages. (Doc. 13, pp. 2, 11).[3]

---

[3] On July 27, 2023, Plaintiff filed a supplement to his second amended complaint requesting additional damages. We will not consider Plaintiff's supplement, however, because he did not seek leave of Court to file it. *See* Fed. R. Civ. P. 15(d). Even if we had, however, these additional requests for relief would not change the outcome in this case.

On September 25, 2023, Defendant filed a motion to dismiss. (Doc. 26). Along with its motion, Defendant filed a brief in support. (Doc. 28). On October 5, 2023, Plaintiff filed a brief in opposition. (Doc. 30). Plaintiff does not, however, meaningfully respond to any of Defendant's arguments in his brief. Defendant did not file a reply. Defendants motion is fully briefed and is now ready to resolve.

### III.    LEGAL STANDARDS

Before beginning our analysis, we will review the legal standards for evaluating motions to dismiss under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure and will discuss our obligation to construe Plaintiff's second amended complaint and brief liberally.

#### A.    RULE 12(B)(2): DISMISSAL FOR LACK OF PERSONAL JURISDICTION

Rule 8(a)(1) of the Federal Rules of Civil Procedure requires that a "pleading that states a claim for relief must contain . . . a short and plain statement of the grounds for the court's jurisdiction." Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal when allegations of personal jurisdiction are insufficient or absent.

Personal jurisdiction refers to a court's ability to assert judicial power over parties and bind them by its adjudication. Where that power is absent, a lawsuit cannot proceed. "Once challenged, the plaintiff bears the burden of establishing

personal jurisdiction."[4] If the court "does not conduct [an] evidentiary hearing . . . [the] plaintiff need only plead [a] prima facie case" of jurisdiction to defeat a motion to dismiss.[5] This burden is satisfied where a plaintiff presents facts that, if true, would permit the court to exercise personal jurisdiction over the defendant. In deciding a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."[6] "Of course, by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears the facts alleged to support jurisdiction are in dispute."[7]

### B.    RULE 12(B)(6): DISMISSAL FOR FAILURE TO STATE A CLAIM

Rule 8(a) of the Federal Rules of Civil Procedure requires that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes full or partial dismissal of a pleading where that statement is defective. "The defendant bears the burden of showing that no

---

[4] *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (citation omitted).
[5] *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (citations omitted).
[6] *Id.* (citations omitted).
[7] *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009).

claim has been presented."[8] To assess the sufficiency of a complaint when dismissal is sought under Rule 12(b)(6), a court should: (1) take note of the elements a plaintiff must plead to state a claim; (2) identify mere conclusions which are not entitled to the assumption of truth; and (3) determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of a legal claim.[9]

In order for his or her allegations to be taken as true, a plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[10] To state a claim, a plaintiff must plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]."[11] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[12] Thus, courts "need not credit a claimant's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."[13] The court also need not assume that a plaintiff can prove facts that he or she has not

---

[8] *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005).

[9] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[11] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556 (internal quotation marks omitted)).

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[13] *Morse v. Lower Marion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

alleged.[14] "To prevent dismissal, all civil complaints must . . . set out sufficient factual matter to show that the claim is facially plausible."[15]

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16] The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.[17] This "presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'"[18] The plausibility determination is context-specific and does not impose a heightened pleading requirement.[19]

## C.    LIBERAL CONSTRUCTION OF PRO SE FILINGS

Litigants proceeding without out counsel are commonly referred to as "*pro se*" litigants. The Court is required to construe *pro se* filings liberally. This means that "[w]e read 'the *pro se* party's papers liberally and interpret them to raise the

---

[14] *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[15] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 1949).

[16] *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

[17] *Jordan v. Fox Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

[18] *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted) (alternations in original).

[19] *Id.* at 347.

strongest arguments suggested therein."[20] The Court cannot, however, function as a *pro se* litigant's advocate.[21] Moreover, a *pro se* litigant is "not relieved from the rules of procedure and the requirements of substantive law."[22] "At the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."[23]

## IV.    ANALYSIS

In its motion and brief, Defendant argues that Plaintiff's second amended complaint should be dismissed because Plaintiff does not allege any basis under which this Court could exercise personal jurisdiction over Defendant, and because Section 230 of the Communications Decency Act bars Plaintiff's claims. We agree that Plaintiff does not allege any basis under which we could exercise jurisdiction over Defendant, and even if he did Defendant would be immune from liability under Section 230 of the Communications Decency Act. Because these findings compel dismissal of Plaintiff's second amended complaint, we will not address Defendant's remaining arguments that Plaintiff's claims are barred by the applicable statute of limitations and that Plaintiff failed to plead a plausible claim.

---

[20] *Talbert v. Corr. Dental Assocs.*, No. CV 18-5112, 2020 WL 6530317, at *1 n.7 (E.D. Pa. Nov. 5, 2020) (quoting *Hodson v. Alpine Manor, Inc.*, 512 F.Supp.2d 373, 384 (W.D. Pa. 2007)).

[21] *Lourdes G. on behalf of R.E.G. v. O'Malley*, No. 2:22-CV-6216, 2024 WL 3289647 (D.N.J. July 3, 2024) (quoting *United States v. Peppers*, 482 F.App'x 702, 704 (3d Cir. 2012)).

[22] *Parkell v. Danberg*, 83 F.3d 313, 326 n. 6 (3d Cir. 2016).

[23] *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

Before turning to Defendant's arguments, however, we will first discuss the nature of the legal claims asserted in Plaintiff's second amended complaint.

## A.    LIBERAL CONSTRUCTION OF PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff's second amended complaint is twelve pages long. The first seven pages are handwritten on lined paper. (Doc. 13, pp. 1-7). In those seven pages, Plaintiff alleges that Defendant negligently allowed third parties to post and share defamatory statements about him, and negligently failed to remove those statements from its website. *Id.* The eighth page of the second amended complaint is a certificate of service. (Doc. 13, p. 9). Pages nine through twelve are a form complaint designed for prisoners filing civil rights lawsuits. (Doc. 13, pp. 9-12). Plaintiff repeats some of his allegations on this form, and requests damages. On that form, there is a choice of two statutes to file the claim under: 42 U.S.C. § 1983—State Officials, and 28 U.S.C. § 1331—Federal Officials. Defendant, however, is neither a state nor federal official. Plaintiff was thus faced with a confusing choice. Plaintiff selected 28 U.S.C. § 1331. This statute explains that federal district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.

In their brief, Defendants interpret Plaintiff's second amended complaint as arising under state law only. (Doc. 28, p. 10). Plaintiff does not dispute this characterization of his second amended complaint in his response. (Doc. 30).

Therefore, we will construe Plaintiff's second amended complaint as asserting only state law torts against Defendant. Plaintiff alleges that Defendant resides in California and seeks more than $75,000.00 in damages. Thus, this case is before us based on diversity jurisdiction under 28 U.S.C. § 1332.

### B.     PLAINTIFF DOES NOT ALLEGE FACTS THAT PLAUSIBLY SHOW THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

Defendant argues that Plaintiff's second amended complaint should be dismissed because Plaintiff did not adequately plead any basis for this Court to exercise personal jurisdiction over Defendant.

Plaintiff filed a brief in opposition. He did not, however, supply any information related to personal jurisdiction and does not assert any legal theory under which this Court could exercise personal jurisdiction over Defendant. (Doc. 30). Thus, as it pertains to Defendant's jurisdictional argument, Plaintiff appears to rest on the allegations set forth in the second amended complaint.

There are two categories of personal jurisdiction: specific personal jurisdiction, and general personal jurisdiction. To avoid dismissal, Plaintiff's second amended complaint must include facts under which this Court could exercise one of these two types of personal jurisdiction.

First, we will discuss whether Plaintiff pleaded facts that would allow the Court to exercise specific personal jurisdiction over Defendant. Specific personal

jurisdiction allows a court to hear claims "deriving from, or connected with, the very controversy that establishes jurisdiction."[24]

> Specific jurisdiction exists "when the plaintiff's claim is related to or arises out of the defendant's contacts with the forum." *Mellon Bank (East) PSFS*[, *Nat. Ass'n v. Farino*, 960 F.2d 1217. 1221 (3d Cir. 1992)]; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Courts apply a three-part inquiry to determine whether specific jurisdiction exists: (1) "the defendant must have 'purposefully directed its activities' at the forum;" (2) "the litigation must 'arise out of or relate to' at least one of those activities;" and (3) the exercise of jurisdiction must "otherwise comport[ ] with 'fair play and substantial justice.'" *O'Connor*, 496 F.3d at 317 (internal citations omitted). Even a single act can support specific jurisdiction, so long as it creates a "substantial connection" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 n.18, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).[25]

If the Court finds that the above-quoted factors are satisfied, it may exercise specific personal jurisdiction over a nonresident corporation, like Defendant. The allegations set forth in Plaintiff's second amended complaint and brief, however, do not satisfy these factors. Construing all relevant allegations in Plaintiff's pleading in the light most favorable to him, Plaintiff pleads that Defendant has the following contacts with Pennsylvania: (1) it operates a social media website that is accessible in Pennsylvania; (2) Defendant's failure to stop individuals from posting or sharing defamatory posts caused injury to Plaintiff in Pennsylvania; and (3)

---

[24] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotation marks and citation omitted).

[25] *Camber Spine Techs. v. Intermed Res. TN, LLC*, No. 22-3648, 2023 WL 5182597, at *4 (E.D. Pa. Aug. 11, 2023).

Defendant's failure to take down the defamatory posts caused injury to Plaintiff in Pennsylvania. (Doc. 13).

The first element of the test requires the Court to consider whether Defendant purposefully directed the activities at issue in this case at Pennsylvania. In applying the purposeful direction requirement to cases involving websites, the Third Circuit has explained that "the mere operation of a commercially interactive web site" does not suffice.[26] The general availability of a website accessible to all who seek it out, but targeted at no one, does not satisfy the purposeful direction requirement.[27] "Other courts addressing similar situations have also concluded that specific personal jurisdiction over [Defendant] was lacking notwithstanding the fact that Facebook was available to and used by residents of those states and allegedly caused harm in those states."[28] Here, Defendant's website is generally available. Plaintiff does not allege anything that suggests Defendant specifically targeted Pennsylvania residents by failing to moderate the content of information posted to its website. Thus, the allegations in Plaintiff's second amended complaint

---

[26] *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003).

[27] *Romero v. Meta Platforms, Inc.*, No. 7:23-CV-3306-TMC-KFM, 2024 WL 1554826, at *4 (D.S.C. Mar. 14, 2024) (citing *Conrad v. Benson*, No. 9:20-CV-1811, 2020 WL 4754332, at *4 (D.S.C. Aug. 14, 2020)), *report and recommendation adopted*, No. 7:23-CV-3306-TMC, 2024 WL 3466403 (D.S.C. July 19, 2024).

[28] *Id.* at *4 (collecting cases).

and brief do not satisfy the purposeful direction requirement. Because this element is not satisfied, we need not address the second or third element. Plaintiff has not met his burden of alleging sufficient facts that, if true, would permit the court to exercise specific personal jurisdiction over Defendant.

Second, we will discuss whether Plaintiff pleaded facts that would allow the Court to exercise general personal jurisdiction over Defendant. General personal jurisdiction allows a court "to hear any and all claims against" a defendant.[29]

> The Supreme Court has held that a state and thus a federal district court in the state has general jurisdiction to hear any and all diversity claims against a corporation but only where it is at home. The two so-called paradigmatic fora are where the corporation is incorporated and where it has its principal place of business. The Supreme Court, however, has not ruled out other exceptional situations where a defendant's continuous and systematic activity is at such a high level "so as to render [the defendant] essentially at home in the forum state." *Daimler*, 134 571 U.S. at 122, 134 S.Ct. 746 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011)).

> Recently, the Supreme Court has handed down *Mallory v. Norfolk Southern Ry. Co.*, 600 U.S. 122, 143 S. Ct. 2028, 216 L.Ed.2d 815 (2023). There, the plaintiff sued his former employer, the defendant railroad, in the state court in Pennsylvania to recover damages for negligence under the Federal Employers' Liability Act. Plaintiff was not living in Pennsylvania and his injuries did not occur here. Plaintiff instead was residing in Virginia. The railroad was also incorporated and had its principal place of business in Virginia but had extensive and regular operations in Pennsylvania. The Supreme Court held that defendant consented to the general jurisdiction of the state court over claims against it when it registered to do business as a foreign

---

[29] *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quotation marks and citation omitted).

corporation and had appointed an agent to receive service of process in the Commonwealth. The Court grounded its decision on a Pennsylvania statute which provided that the tribunals of the Commonwealth have general personal jurisdiction over an entity based on its "qualification as a foreign corporation under the laws of this Commonwealth," that is one that is "a registered foreign corporation." *See* 42 Pa. Stat. Am. § 5301(a)(2) (i); *Mallory*, 143 S. Ct. at 2037.[30]

Plaintiff does not allege Defendant has its principal place of business in Pennsylvania and does not allege it is incorporated in Pennsylvania. Thus, we cannot reasonably base general personal jurisdiction on the location of Defendant's principal place or business or state of incorporation.[31]

Generally, the operation of an interactive website, without more is not so substantial that it may be comparable to being at "home" in a state where it is neither located nor incorporated.[32] This case is no exception. Plaintiff vaguely alleges that Defendant operates a social media website that is accessible in Pennsylvania. These general allegations are not enough to plausibly demonstrate a high level of systematic and continuous activity in Pennsylvania such that Defendant could be considered "at home" here. Thus, Plaintiff does not allege there is any exceptional circumstance under which we could exercise general

---

[30] *Simon v. First Sav. Bank of Indiana*, 692 F.Supp.3d 479, 482-83 (E.D. Pa. 2023).

[31] We also note that Defendant's Rule 7.1 Disclosure indicates that Defendant is a publicly held corporation organized under the laws of the State of Delaware (Doc. 25) and Plaintiff alleges that Facebook operates in California.

[32] *See e.g.*, *Romero*, 2024 WL 1554826, at *6.

personal jurisdiction over Defendant.

Further, Defendant argues that Plaintiff's allegations do not support general jurisdiction because he "does not allege Meta has consented to jurisdiction in Pennsylvania." (Doc. 28, p. 14). Defendant is correct that Plaintiff does not *allege* Defendant consented to personal jurisdiction in Pennsylvania, for example by alleging Defendant is registered in Pennsylvania as a foreign corporation.[33] Thus, Plaintiff does not allege facts under which the Court could exercise general personal jurisdiction over Defendant based on its consent.

For the reasons we explained herein, Plaintiff does not allege sufficient factual matter that would allow this Court to exercise specific or general personal jurisdiction over Defendant, therefore we will grant Defendant's motion to dismiss this case. Although it is likely this pleading defect could be remedied, conducting an evidentiary hearing, permitting jurisdictional discovery, or permitting Plaintiff to file a third amended complaint to cure it would be futile in this case. Even if Plaintiff were to plead sufficient facts to show personal jurisdiction, his claims that Defendant negligently permitted others to post defamatory statements about him, negligently failed to remove those posts, and any other tort claim based on the

---

[33] "Pennsylvania expressly permits its courts to exercise 'general personal jurisdiction' over registered foreign corporations 42 Pa. Cons. Stat § 5301(a)(2)(i), and the Supreme Court has explained that a foreign corporation consents to this general personal jurisdiction by complying with Pennsylvania's registration requirements." *Vonbergen v. Liberty Mut. Ins. Co.*, 705 F.Supp.3d 440, 448 (E.D. Pa. 2023) (citing *Mallory*, 600 U.S. 122, 134-35).

allegations contained in his second amended complaint, would be barred by Section 230 of the Communications Decency Act.

## C.   SECTION 230 OF THE COMMUNICATIONS DECENCY ACT

In his second amended complaint, Plaintiff alleges that, after he spoke with a troubled young woman, her father became upset and posted defamatory statements about Plaintiff on Facebook. Others saw the posts and shared them. As a result, Plaintiff was harassed, threatened, arrested, pleaded guilty to a crime, and is now in prison. Plaintiff alleges Defendant had an obligation to protect him from false and defamatory statements that its users posted, and that its failure to protect Plaintiff was negligent. The objectionable statements at issue involve accusations that Plaintiff is a pedophile, sexual predator, or a serial killer.

Defendant argues that Plaintiff's claims against it should be dismissed because they are barred by Section 230 of the Communications Decency Act.

Plaintiff does not meaningfully respond to this argument in his brief and does not argue that any exception to this bar applies.

In 1996, Congress passed Section 230 of the Communications Decency Act to promote the internet.[34] In doing so,

> It specifically sought to preserve "the vibrant and competitive free market"—"unfettered by Federal or State regulation." § 230(b)(2). The Act also promoted filtering technology and the vigorous

_____

[34] *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (citing 47 U.S.C. § 203(b)).

enforcement of criminal obscenity laws. § 230(b)(5). In essence, Congress fostered a largely unregulated free market online while snuffing out certain objectionable content.[35]

As the Third Circuit explained in *Hepp v. Facebook*, "Section 230(c) strikes the balance. It provides 'Good Samaritan' protection, which enables 'blocking and screening of offensive material.'"[36] The statute states:

> (1) TREATMENT OF PUBLISHER OR SPEAKER. No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

> (2) CIVIL LIABILITY. No provider or user of an interactive computer service shall be held liable on account of—

>> (A) any action . . . to restrict access to . . . objectionable . . . [material]; or

>> (B) any action taken to enable . . . the technical means to restrict access to material described in paragraph [A].[37]

"This provision bars attempts to treat websites as publishers or speakers of content posted by others," and "encourages companies to host and moderate third-party content by immunizing them from certain moderation decisions."[38] "In other words, it forgoes some publisher liability and paves the way for service providers to make their own moderation decisions."[39] It effectively "bars 'lawsuits seeking to

---

[35] *Id.*

[36] *Id.*

[37] 47 U.S.C. § 230(b).

[38] *Hepp*, 14 F.4th at 209 (citing 47 U.S.C. § 230(c)).

[39] *Id.*

hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content.'"[40] Thus, "Section 230 immunizes from liability (1) an interactive computer service provider (2) whom a plaintiff seeks to treat as a publisher or speaker of information (3) provided by another information content provider."[41] Defendant argues that Plaintiff's claims are barred because, taking the allegations in Plaintiff's second amended complaint as true, each of these three conditions have been met.

First, we must consider whether Defendant is an interactive computer service provider.[42] "Courts in the Third and other Circuits have held that websites and social media are considered interactive computer service providers under

---

[40] *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).

[41] *Elansari v. Meta, Inc.*, No. CV 21-5325, 2022 WL 4635860, at *6 (E.D. Pa. Sept. 30, 2022) (quoting *Putt v. TripAdvisor Inc.*, No. CV 20-3836, 2021 WL 242470, at *4 (E.D. Pa. Jan. 25, 2021)), *aff'd*, No. 22-3060, 2024 WL 163080 (3d Cir. Jan. 16, 2024).

[42] Section 230(f)(2) provides the definition of an interactive computer service:

> The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

47 U.S.C. § 230(f)(2).

Section 230."[43] The facts alleged in Plaintiff's second amended complaint demonstrate that Defendant operates as a social media website. (Doc. 13). Therefore, we find that Defendant is an interactive computer service provider.

Second, we must consider whether Plaintiff is attempting to treat Defendant as a publisher or speaker of information. A plaintiff treats a defendant as a publisher or speaker of information where he or she seeks to hold a defendant "liable for 'a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content.'"[44] Decisions related to the monitoring, screening, and deletion of content from a computer service provider's network are "quintessentially related to a publisher's role."[45] Here, to support his negligence claims Plaintiff alleges that Defendant allowed people to post defamatory information about him on their website, and did not remove the information. (Doc. 13). The conduct at issue therefore falls squarely into a publisher's traditional editorial functions. Therefore, we find that Plaintiff is attempting to treat Defendant as a publisher or speaker of information.

Third, we must consider whether the content at issue was provided by a third party content provider. This factor is met where a third party (and not the

---

[43] *Elansari*, 2022 WL 4635860, at *6.
[44] *Id.* (quoting *Green*, 318 F.3d at 471).
[45] *Green*, 318 F.3d at 471.

defendant) creates the content at issue.[46]  Plaintiff alleges the content at issue was posted by the father of a young woman he attempted to help. Nothing in Plaintiff's second amended complaint suggests Defendant itself made any statement about Plaintiff. Therefore, we find that the content at issue came from a third party source and was not created by Defendant.

Because all three elements to establish immunity from liability under Section 230 are met, Plaintiff's claims against Defendant are barred by Section 230 of the Communications Decency Act. Defendant's motion to dismiss Plaintiff's claims against it will be granted.

### D.    LEAVE TO AMEND

Although Plaintiff does not request it, Defendant argues that further leave to amend in this case should be denied. It argues that granting further opportunities to amend in this case would be futile, and we agree. Granting Plaintiff leave to amend his state tort claims in this case would be futile, as Defendant is immune from liability under the Communications Decency Act. Amendment could not cure this defect. Moreover, Plaintiff has already been granted leave to amend *sua sponte* on two occasions. Despite being given these opportunities, he has not pleaded a plausible claim. Therefore, Plaintiff will not be afforded leave to amend in this case.

---

[46] *See Elansari*, 2022 WL 4635860, at *6 (finding that the third factor was met where the Defendant did not create or develop the content at issue).

## V.    CONCLUSION

For the reasons explained herein, Defendant's motion to dismiss (Doc. 26) is

GRANTED. An appropriate order will be issued.


Date: October 18, 2024                    BY THE COURT

                                          *s/William I. Arbuckle*
                                          William I. Arbuckle
                                          U.S. Magistrate Judge